FILED'11 FEB 22 14:12USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| JANE DOE, by and through her Guardian ad Litem Christina H.; JANE DOE 2, by and through her Guardian ad Litem Elaine H., and JANE DOE 3, by and through her Guardian ad Litem Jackie F., | Civil No. 10-3113-CL |
| Plaintiffs, | REPORT AND RECOMMENDATION |
| v. | |
| MEDFORD SCHOOL DISTRICT 549C, PHIL LONG, SALLIE JOHNSON, and CHRIS GILMAN, | |
| Defendants. | |

CLARKE, Magistrate Judge.

This matter comes before the Court on plaintiff Jane Doe, Jane Doe 2, and Jane Doe 3's (collectively, "plaintiffs") motion to strike (#49), and defendants Medford School District 549C ("the District"), Phil Long ("Long"), and Sallie Johnson's ("Johnson") (collectively, "the District Defendants") motion to dismiss (#42).  For the reasons stated below, plaintiffs' motion to strike should be denied, and the District defendants' motion to dismiss should be granted in part and denied in part.

Page 1 - REPORT AND RECOMMENDATION

## BACKGROUND

Plaintiffs, by and through their guardians ad litem, filed this action October 12, 2010, asserting eight claims for relief arising out of a series of incidents of alleged sexual misconduct by Chris Gilman ("Gilman"), a fourth grade teacher at Howard Elementary School ("Howard"), which is owned and operated by the District. Long is the District's Superintendent, and Johnson is the Principal at Howard. Plaintiff alleges these claims variously against Gilman, the District, Long, and Johnson.

## LEGAL STANDARDS

### MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money" associated with litigating "spurious issues." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). A defense may be insufficient as a matter of law or as a matter of pleading. Where a defense cannot succeed under any set of circumstances, it is insufficient as a matter of law. Fed. R. Civ. P. 12(f); *see also* Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (*citing* 5A A. CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1380, 647 (2d ed. 1990)), *cert. denied*, 535 U.S. 904, 122 S.Ct. 1203 (2002). Where an affirmative defense fails to give plaintiff fair notice of the defense, it is insufficiently pled. Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir. 1979).

### MOTION TO DISMISS

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

upon which relief can be granted. The question presented by a motion to dismiss is not whether
the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in
support of the claim. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other
grounds by* Davis v. Scherer, 468 U.S. 183 (1984). In answering this question, the court must
assume that the plaintiffs' allegations are true and must draw all reasonable inferences in the
plaintiffs' favor. *See* Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). A
complaint need not make "detailed factual allegations," however, "a formulaic recitation of the
elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-
56 (2007). To survive a motion to dismiss under FRCP 12(b)(6), plaintiffs must allege sufficient
facts to "raise a right to relief above the speculative level." Id. at 555. That is, plaintiffs must
show that their claims not merely conceivable, but plausible. Id. at 570; Ashcroft v. Iqbal, -- U.S.
--, --, 129 S.Ct. 1937, 1950 (2009). This plausibility inquiry is "a context specific task that
requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129
S.Ct. at 1950. The court inquiry is limited to the face of the complaint, id., and matters that may
be judicially noticed, MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If the court dismisses the complaint, it must then decide whether to grant leave to amend.
Leave to amend should be granted unless it is clear that the complaint cannot possibly be cured
by the allegation of other facts. Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995); *see
also* Fed. R. Civ. P. 15(a) ("leave [to amend] is to be freely given when justice so requires"). The
court must also consider whether granting leave to amend will result in undue prejudice to the
opposing party, is sought in bad faith or for a dilatory motive, is futile, or creates undue delay.
Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001). When amendment

Page 3 - REPORT AND RECOMMENDATION

would be futile, dismissal may be ordered with prejudice. Oki Semiconductor Co. V. Wells

Fargo Bank, Nat. Ass'n, 298 F.3d 768, 772 (9th Cir. 2002) (*citing* Dumas v. Kipp, 90 F.3d 386,

393 (9th Cir. 1996)).

<div align="center">**DISCUSSION**</div>

## I.    MOTION TO STRIKE

### 1.  First motion to strike

Failure to state a claim on which relief can be granted is an affirmative defense that may

be raised in any pleading allowed or ordered under Rule 7(a), by motion, or at trial. FED. R. CIV.

P. 12(h)(2).  Plaintiff argues that the heightened pleading standard enunciated by the United

States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955

(2007), and clarified in Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct. 1937 (2009), should apply to the

pleading of affirmative defenses, and that under this standard Gilman's first affirmative defense,

"Failure to State a Claim," is insufficiently pled and should therefore be stricken.  (Mot. to Strike

at 2).  In plaintiffs' view, an affirmative defense is insufficiently pled, and therefore vulnerable to

a motion to strike, if it simply states a legal conclusion without providing supporting facts that

explain how the defense relates to the instant case.  (Id.).  However, neither the Ninth Circuit nor

any other Circuit Court of Appeal has held that Twombly and Iqbal govern the pleading standard

for affirmative defenses.  This court need not decide the issue here.  Plaintiffs claims arise out of

a series alleged incidents of conduct, which Gilman denies.  While Gilman's First Affirmative

Defense (Failure to State a Claim) is perhaps best understood as a general denial of plaintiffs'

allegations rather than an affirmative defense, the basis for the defense is unmistakable, and the

defense is properly asserted as allowed by Rule 12(h).  Plaintiffs' motion to strike should

therefore be DENIED.

## 2. Second motion to strike

Plaintiffs' Complaint asserts claims against Gilman for intentional infliction of emotional distress ("IIED"), sexual battery, false imprisonment, and fraud. Gilman's Second Affirmative Defense (Oregon Tort Claims Act) asserts immunity from suit as to all plaintiffs' statutory and common law claims under the Oregon Tort Claims Act, OR. REV. STAT. § 30.260, *et seq.*, which provides, in relevant part, that the sole cause of action for any tort of employees of a public body acting within the scope of their employment or duties and eligible for representation and indemnification shall be against the public body. OR. REV. STAT. § 30.265(1). Under either the Twombly/Iqbal standard or the more lenient Wyshak standard, the pleading is sufficient. Plaintiffs allege that Gilman was acting within the scope and course of his employment with the District at all material times. (Compl. at 7, ¶ 11). Plaintiffs do not allege alternative claims that Gilman acted outside the course and scope of his employment. Should Gilman be entitled to indemnification and a defense under the OTCA, he could properly move to substitute the District as the sole defendant. Therefore, plaintiffs' motion to strike Gilman's Second Affirmative Defense should be DENIED.

## 3. Third motion to strike

Gilman's Third Affirmative Defense (Qualified Immunity) asserts immunity "from liability for civil damages because his conduct does not violate any clearly established constitutional right." Plaintiffs' First Claim for Relief asserts a claim under 42 U.S.C. § 1983 for violation of their 4th and 14th Amendment due process rights, (Compl. at 8), to which qualified immunity is a defense. "Qualified immunity is an affirmative defense that must be pleaded by a

Page 5 - REPORT AND RECOMMENDATION

defendant official." Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789 (1991) (*citing* Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980); Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727 (1982)). Therefore, plaintiffs' motion to strike Gilman's Third Affirmative Defense (Qualified Immunity) should be DENIED.

## II.    MOTION TO DISMISS

### 1. First motion to dismiss

The District defendants move to dismiss Johnson from plaintiffs' Second Claim for Relief, which alleges a claim for IIED against all defendants, arguing that the court is required to substitute the District as the sole defendant upon proper motion by the defendants pursuant to OR. REV. STAT. § 30.265(1). Plaintiff argues that substituting the District as the sole defendant at this stage of the proceedings is premature in light of the Oregon Supreme Court's decision in Clarke v. Oregon Health Sciences University, 343 Or. 581, 175 P.3d 418 (2007). Resolving this question requires the court to answer the question of whether a plaintiff may avoid the substitution of a public body as the sole defendant by alleging damages at the pleading stage which raises the possibility of an as applied challenge to the constitutionality of the OTCA's damages cap.

#### The Oregon Tort Claims Act, ORS § 30.260, *et seq.*

The OTCA provides, in relevant part:

> "The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only. . . . If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant."

Or. Rev. Stat. § 30.265(1). Officers, agents, and employees of a public body have a statutory

Page 6 - REPORT AND RECOMMENDATION

right to receive indemnity and a defense (1) when the plaintiff's claim falls within ORS §

30.285(1) on the face of the complaint, and (2) when the employee asserts that the claims fall

within the statute as a matter of fact. OR. REV. STAT. §§ 30.285(3), 30.287(1).  The court

determines whether a public body should be the sole defendant in a case brought against a public

body officer, agent, or employee using these criteria.  Although ORS § 30.265(1) dictates that a

court "shall" substitute the public body as the only defendant, Oregon courts have recognized

exceptions to the rule.  *See, e.g.*, Berry v. Dep't Gen. Servs., 141 Or. App. 225, 917 P.2d 1070

(1996) (error to substitute public body as sole defendant where plaintiff alleged alternative claims

that public body employee (1) acted within the course and scope of his employment, or (2) acted

independently and without authorization, outside the course and scope of their employment;

substituting public body prevented plaintiff from pursuing possibly meritorious claim against

defendant for his individual torts).

### Clarke v. Oregon Health Sciences University

In Clarke, the plaintiff suffered permanent brain damage as a direct result of the

negligence of OHSU and several of its employees, and filed suit seeking $11,073,506 for life and

health care expenses, $1,200,000 for lost future earnings, and $5,000,000 in non-economic

damages.  343 Or. at 586, 175 P.3d 418.  The trial court granted the defendants' motion to

substitute OHSU as the sole defendant pursuant to ORS § 30.265(1), and, after the plaintiff filed

an amended complaint naming OHSU as the sole defendant, granted OHSU's motion for

judgment on the pleadings and entered judgment in the amount of $200,000.  Id. at 586-87.

The Oregon Court of Appeals rejected the plaintiff's argument that limiting OHSU's

liability to $200,000 pursuant to the OTCA deprived him of the right to a remedy in violation of

Article I, section 10, of the Oregon Constitution, but held that substituting OHSU as the sole

defendant deprived him of a constitutionally adequate remedy, finding that limiting his recovery

to less than two percent of his economic damages could not restore the injured right. Id. at 587-

88. The Oregon Supreme Court affirmed the Court of Appeal's judgment remanding the case

with instructions to reinstate the claims against the individual defendants. Id. at 610.

### Ackerman v. OHSU Med. Group

In a post-Clarke decision, the Oregon Court of Appeals was confronted with the question

of how to determine when enforcing the OTCA damages cap results in an "as applied"

unconstitutional result. Ackerman v. OHSU Med. Group, 233 Or. App. 511, 227 P.3d 744

(2010). In Ackerman, the plaintiff sued his physician, West, who was an employee of both

OHSU and  OHSU Medical Group ("Medical Group"), for complications resulting from surgery.

Id. at 514. The jury found that the physician's treatment of the plaintiff was negligent and

returned a verdict in the plaintiff's favor for $412,000 in economic damages and $1,000,000 in

non-economic damages. Id. The trial court denied the post-verdict motion of West and Medical

Group to substitute OHSU as the sole defendant and limit OHSU's liability to $200,000 pursuant

to the OTCA, ruling that to do so would deprive the plaintiff of a constitutionally guaranteed

remedy. Id. The trial court then entered judgment in favor of the plaintiff for the full amount of

his damages, but limited OHSU's liability to $200,000 pursuant to the OTCA.

On appeal, the Oregon Court of Appeals held that (1) Medical Group had not established

that it was an agent of OHSU and could be separately liable as a co-employer of West; (2)

Medical Group was an "instrumentality of the state" and would have been immune from suit in

1857, therefore the trial court erred in denying Medical Group's motion to limit its liability

pursuant to the OTCA; and (3) the trial court correctly ruled that the plaintiff was entitled to recover the full amount of his damages and that the proper judgment would find OHSU liable for $200,000, Medical Group liable for $200,000, and West liable for the remainder, $1,012,000, because limiting plaintiff's recovery to $400,000 would result in a constitutionally inadequate remedy. Id. at 519-33.

### Discussion

Read together, Clarke and Ackerman support plaintiffs' argument that dismissing Johnson at this stage of the proceedings is premature. Although ORS § 30.265(1) mandates the public body "shall" be substituted as the sole defendant, Berry demonstrates that Oregon Courts have not felt compelled to read the statute literally where doing so would deprive the plaintiff of the opportunity to pursue potentially meritorious claim. Clarke establishes that a plaintiff may raise and prevail in an as-applied challenge to the OTCA damages cap. Although Clarke appears to be the exception and not the rule, this does not change the fact that such a claim may be meritorious.

This court takes guidance from Ackerman, and in particular, its procedural posture. In Ackerman, the defendants moved to substitute OHSU as the sole defendant after the jury verdict "[a]s they had *on several occasions before and during the trial*." 233 Or. App. at 514 (emphasis added). Thus, it is clear that the trial court repeatedly denied motions to substitute OHSU as the sole defendant pursuant to ORS § 30.265(1) at all times prior to the jury's verdict, electing instead to reserve the issue of whether West and Medical Group could properly be dismissed until after the plaintiff's damages, if any, were known. Ackerman is silent on why the trial court elected to proceed this way, i.e. whether the court anticipated or the plaintiff raised an as-applied challenge to the constitutionality of the OTCA's damages cap in any of the pre-trial or pre-verdict

Page 9 - REPORT AND RECOMMENDATION

motions. Regardless of the trial court's reasoning, this court finds significant that the Oregon Court of Appeals did not find error in the trial court's decision to proceed in this fashion.

Unlike the plaintiffs in Clarke and Ackerman who suffered physical injuries, plaintiffs' alleged injuries here are emotional and psychological, therefore damages resulting from their injuries are not as easily calculated. Plaintiffs' prayer for relief reflects this: each plaintiff seeks economic damages in an amount to be determined "according to proof," non-economic damages "not to exceed $1,000,000" on all claims, attorney fees, and costs. (Compl. at 17-18). While inartfully pleaded,[1] it appears that each plaintiff is seeking $1,000,000 in non-economic damages for each of the eight claims alleged. The court therefore liberally construes the Complaint as alleging damages in an amount exceeding $8,000,000 for each plaintiff. However, plaintiffs' damages are entirely speculative at this point in the proceedings.

Should plaintiffs prevail on their claims and be awarded damages totaling $1,000,000 or less, they cannot prevail in an as-applied challenge to the OTCA damages cap. However, should a jury return a verdict in their favor awarding damages in an amount comparable to that alleged in the prayer for relief, there can be little doubt that plaintiffs will raise an as-applied challenge to the OTCA damages cap. This court offers no opinion and makes no prediction as to whether plaintiffs can or will prevail in such an argument. However, should plaintiffs prevail in an as-applied OTCA challenge after the court has dismissed Johnson, additional court proceedings would be required to determine Johnson's individual liability. Ackerman provides some

---

[1] Plaintiffs' prayer seeks "On all claims, non-economic damages an amount not to exceed $1,000,000" for Jane Doe, and "On all claims, non-economic damages not to exceed $1,000,000" for Jane Doe 2 and Jane Doe 3. Although the prayer reads as though each plaintiff seeks a total of $1,000,000 for all non-economic damages, plaintiffs' response in opposition to the motion to dismiss references $8,000,000 in non-economic damages sought for each plaintiff.

indication that Oregon courts faced with this scenario will decline to substitute the public body as

the sole defendant and instead reserve the determination of whether or not to dismiss defendants

until damages have been awarded, thereby allowing the court to assess the merit of an as-applied

challenge to the OTCA's damages cap.

Here, the District has by all accounts assumed its statutory responsibility to defend

Johnson, and by seeking to substitute itself as the sole defendant on an number of plaintiffs'

claims has at least indicated its intention to indemnify her should that become necessary. Even if

Johnson is dismissed and the District substituted as the sole defendant on plaintiffs' tort claims,

she would remain in the case as an individual defendant in plaintiffs' claim under 42 § 1983.

Johnson will undoubtedly be deposed, be required to participate in discovery, and be called as

witnesses should the case proceed to trial. Thus, she will remain an active participant in this

litigation regardless of whether or not the motion to dismiss is granted.

### Conclusion

After consideration of relevant statutory and case law, the briefs and arguments of the

parties, and the pleadings, the court finds that dismissing Johnson at this stage of the proceedings

is premature. Therefore, the District defendants' first motion to dismiss should be DENIED.

### 2. Second motion to dismiss

For the sake of clarity and to reduce confusion, the court construes the second motion as a

motion to dismiss the District from plaintiffs' Second Claim for Relief, IIED on a direct liability

theory.[2]

---

[2] The District moves to strike plaintiffs' Third Claim for Relief (vicarious liability for
IIED against the District only) arguing that it is redundant of plaintiffs' Second Claim for Relief
(direct liability for IIED against all defendants). The District argues that, as a fictitious entity, it

IIED is an intentional tort.  A corporate defendant "can be directly liable for intentional

torts where:  (1) the tort is committed by a person or persons wielding the whole executive power

of the corporation; and (2) the tortious acts were committed in behalf of the corporation."   Harris

v. Pameco Corp., 170 Or. App. 164, 172, 12 P.3d 524 (2000) (citing Walthers v. Gossett, 148 Or.

App. 548, 556, 941 P.2d 575 (1997) (internal quotation marks and citations omitted)).  In this

case, the alleged tort is IIED committed by one of the District's teachers, Gilman.  Gilman is not

a person "wielding the whole executive power" of the District, thus plaintiffs' claim fails the first

prong of the Walthers test.  Moreover, there is no allegation that the District directed that Gilman

emotionally distress plaintiffs, thus plaintiffs' claim fails the second prong of the Walthers test as

well.  Harris, 170 Or. App. at 172, 12 P.3d 524.  Therefore, plaintiffs' Second Claim for Relief

fails to state a claim against the District.

Plaintiffs correctly argue that the District may be held directly liable for negligently

supervising Gilman, if that negligence resulted in injury to plaintiffs.  See, e.g., Wilson v.

Tobiassen, 97 Or. App. 527, 531-32, 777 P.2d 1379, rev. denied, 308 Or. 500, 784 P.2d 441

(1989) (organizational defendants found not vicariously liable for sexual abuse of its employee

could still be held directly liable for their own acts of negligent supervision).  However, such a

_____

can only be held vicariously liable through the actions of its employees, therefore plaintiffs'
Second Claim can only be read as asserting a vicarious liability IIED claim against the District.
The District correctly argues that as a fictitious entity, it can act only act through it's officers,
agents, and employees.  Doe v. Or. Conference of Seventh-Day Adventists, 199 Or. App. 319,
328, 111 P.3d 791 (2005) ("When the 'person' upon which liability ultimately rests is a fictive
person, that is, a corporation, the only kind of liability that can conceivably exist is vicarious:  a
corporation . . . can only act through its officers, agents or employees.").  However, the District's
argument is convoluted and confusing.  The court therefore leaves plaintiffs' Third Claim for
Relief undisturbed, and instead construes the motion according to its intent:  to dismiss the claim
against the District for IIED under a direct liability theory.

Page 12 - REPORT AND RECOMMENDATION

claim sounds in negligence and is not properly asserted in plaintiffs' Second Claim for Relief.

The District is improperly named as a defendant in plaintiffs' Second Claim for Relief, therefore, the motion to dismiss the District should be GRANTED.

### 3. Third motion to dismiss

The District defendants move to dismiss Johnson from plaintiffs' Fifth Claim for Relief, which asserts direct liability for sexual battery against Johnson and the District. Plaintiffs argue that Johnson is directly liable for Gilman's acts of sexual battery because Johnson had a special relationship with plaintiffs, was aware of Gilman's predilections to molest female students, and negligently failed to supervise Gilman despite this knowledge. The court understands plaintiffs' argument as asserting two bases for Johnson's liability: (1) for "aiding and assisting" Gilman's acts of sexual battery, and (2) for negligently supervising Gilman.

### A. The District

The court first notes that to the extent plaintiffs' Fifth Claim for Relief asserts a claim against the District for Gilman's sexual battery of plaintiffs, that claim fails. Corporate liability for intentional torts requires plaintiffs to allege sufficient facts to satisfy both prongs of the Walthers test. In this claim, the alleged tort is sexual battery committed by one of the District's teachers, Gilman. Gilman is not a person "wielding the whole executive power" of the District, thus plaintiffs' claim fails the first prong of the Walthers test. Moreover, there is no allegation that the District directed that Gilman sexually batter plaintiffs, thus plaintiffs' claim fails the second prong of the Walthers test as well. Harris, 170 Or. App. at 172, 12 P.3d 524.

Moreover, while the District may be held directly liable for negligently supervising Gilman if that negligence resulted in injury to plaintiffs, this claim sounds in negligence and is

not properly asserted in plaintiffs' Fifth Claim for Relief.

Therefore, plaintiffs' Fifth Claim for Relief fails to state a claim against the District.

**B. Johnson**

Battery is an intentional tort. Ballard v. City of Albany, 221 Or. App. 630, 640-41, 191 P.3d 679 (2008). An individual defendant may be held liable for the intentional torts of another under an "aiding and assisting" theory if the defendant participated in, aided, or procured the tort. Harris, 170 Or. App. at 641, 12 P.3d 524 (*citing* Walthers, 148 Or. App. at 552, 941 P.2d 575). The defendant must also have acted with the requisite mental state, that is, the defendant must either intend that the tort be committed, or at least understand that a tort is being or will be committed by the other when defendant aids him. Id. Plaintiffs' complaint alleges that Johnson knew of Gilman's proclivity to molest female students, that she allowed female students to be placed in his class, that she allowed him to teach his class without supervision, and that she knew of and condoned Gilman's allegedly sexual and other physically inappropriate conduct with his female students. At the pleading stage, this is sufficient to state a claim for battery against Johnson on an aiding and abetting liability theory.

The District defendants argue that Johnson is not a proper party under the OTCA, implicitly invoking ORS § 30.265(1) and seeking to substitute the District as the sole defendant on plaintiffs' Fifth Claim for Relief. Plaintiffs have named the District as a defendant on this claim, however, as discussed above, they cannot maintain a claim against the District on a direct liability theory. Therefore, plaintiffs' claim can only be understood as identifying the District as a possible substitute defendant for Johnson pursuant to ORS § 30.265(1). So construed, the District may be retained as a properly named as a defendant on plaintiffs' Fifth Claim for Relief.

Page 14 - REPORT AND RECOMMENDATION

However, to the extent that the District defendants argue Johnson should be dismissed and the District substituted as the sole defendant pursuant to ORS § 30.265(1), the court finds the motion to be premature for the reasons stated above in the discussion of the District defendants' first motion to dismiss. Therefore, the court recommends that the District defendants' third motion to dismiss be DENIED.

### 4. Fourth motion to dismiss

The District defendants move to dismiss plaintiffs' Sixth Claim for Relief, which asserts vicarious liability for sexual battery against the District and Johnson, in its entirety. Defendants argue that the District should be dismissed because plaintiff's Sixth Claim for Relief is redundant of the Fifth Claim for Relief, and argue Johnson should be dismissed as she is not Gilman's employer and thus cannot be vicariously liable for his actions.

### A. The District

As described above, although the District may be retained as a defendant on plaintiffs' Fifth Claim as a possible substitute defendant, plaintiffs cannot state a claim against the District for sexual battery on a direct liability theory, therefore plaintiffs' Sixth Claim is not redundant of the Fifth Claim. Moreover, the court finds that plaintiffs have alleged sufficient facts to state a claim for sexual battery against the District on a theory of vicarious liability.

An employer may be held vicariously liable for an employees tortious conduct, including intentional torts, when the employee acts within the scope of employment. Schmidt v. Archdiocese of Portland in Or., 235 Or. App. 516, 520, 234 P.3d 990 (2010). An employee's conduct occurs within the scope of employment if (1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least

Page 15 - REPORT AND RECOMMENDATION

partially, by a purpose to serve the employer; and (3) the act is of a kind that the employee was

hired to perform. Id. (*citing* Chesterman v. Barmon, 305 Or. App. 439, 442, 753 P.2d 404

(1988)). "Whether an employee has acted within the scope of employment at any given time

generally is a question for the trier of fact, except in cases where only one reasonable conclusion

may be drawn from the facts pled." Fearing v. Bucher, 328 Or. 367, 374, 977 P.2d 1163 (1999)

(internal citation omitted). In the context of intentional torts, the issue is not whether the

intentional tort itself was committed in furtherance of an interest of the employer or was an

activity of the kind the employee was hired to perform; rather, the focus is on whether the

employee's conduct within the scope of his or her employment "arguably resulted in the acts that

caused plaintiff's injury." Id. at 375-76 (*citing* Chesterman, 305 Or. at 443).

　　　Here, plaintiffs allege that Gilman's status as plaintiffs' teacher put him position of trust,

that used and manipulated his position of trust to ingratiate himself with plaintiffs, that he

engaged in a pattern of grooming for a period of months, creating an opportunity for sexual

abuse. This is sufficient to withstand a motion to dismiss. Schmidt, 235 Or. App. at 523, 234

P.3d 990 (*citing* Fearing, 328 Or. at 377). Therefore, the court recommends that the District

defendants' fourth motion to dismiss be DENIED as to the District.

### B. Johnson

　　　As principal of Orchard, Johnson is an employee of the District serving in a supervisory

position. Plaintiffs have not cited, and this court has not found, any authority holding that a

supervisory employee may be personally held vicariously liable as an "employer" for the actions

of the employees he or she supervises. To the extent that plaintiffs seek to impose liability on

Johnson for negligently supervising Gilman, the claim alleges direct liability for negligent

Page 16 - REPORT AND RECOMMENDATION

supervision, not vicarious liability for sexual battery. Therefore, the court recommends that the District defendants' fourth motion to dismiss be GRANTED as to Johnson.

### 5. Fifth motion to dismiss

The District defendants move to dismiss Johnson from plaintiffs' Seventh Claim for Relief, which asserts a claim against Gilman, Johnson, and the District for false imprisonment. False imprisonment is an intentional tort. Hiber v. Creditors Collection Serv., 154 Or. App. 408, 413, 961 P.2d 898, *rev. denied*, 327 Or. 621, 971 P.2d 413 (1998). Defendants argue Johnson did not herself falsely imprison plaintiffs and furthermore is not a proper party to the claim under the OTCA. On the basis of the authority and reasoning set out above in section II(3)(B), The court finds that plaintiffs' have sufficiently alleged a claim against Johnson for direct liability for false imprisonment on an aiding and assisting theory, that dismissing Johnson at this stage of the proceedings is premature, and recommends that the District defendants' fifth motion to dismiss be DENIED.

### 6. Sixth motion to dismiss

The District defendants move to dismiss Johnson from plaintiffs' Eighth Claim for Relief, which asserts a claim against Gilman, Johnson, and the District for fraud. Defendants argue that under the OTCA this claim may only be maintained against the District. Fraud is an intentional tort. Knepper v. Brown, 345 Or. 320, 329, 195 P.3d 383 (2008). On the basis of the authority and reasoning set out above at section II(3)(B), the court finds that plaintiffs' have sufficiently alleged a claim against Johnson for direct liability for false imprisonment on an aiding and assisting theory, that dismissing Johnson at this stage of the proceedings is premature, and recommends that the District defendants' fifth motion to dismiss be DENIED.

Page 17 - REPORT AND RECOMMENDATION

## CONCLUSION

For the reasons stated above, plaintiffs' motion to strike should be DENIED, and the

District defendants' motion to dismiss should be GRANTED IN PART AND DENIED IN

PART.

***This recommendation is not an order that is immediately appealable to the Ninth***

***Circuit Court of Appeals.*** Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment or appealable

order.

The Report and Recommendation will be referred to a district judge. ***Objections to this***

***Report and Recommendation, if any, are due by March 14, 2011. If objections are filed, any***

***response to the objections are due by March 31, 2011.*** *See* Fed. R. Civ. P. 72, 6.

DATED this _____ day of February, 2011.

_____
MARK D. CLARKE
United States Magistrate Judge

Page 18 - REPORT AND RECOMMENDATION